**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| AMY LYN SMITH, | ) | NO. ED CV 14-2473-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGMENT** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

IT IS HEREBY ADJUDGED that the decision of the Commissioner of the Social Security Administration is reversed in part and the matter is remanded for further administrative action consistent with the Memorandum Opinion and Order of Remand filed concurrently herewith.

DATED: October 7, 2015.

_____
/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AMY LYN SMITH,                          )        NO. ED CV 14-2473-E
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        **MEMORANDUM OPINION**
                                        )
CAROLYN W. COLVIN, ACTING               )        **AND ORDER OF REMAND**
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
            Defendant.                  )
                                        )
_____)

      Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

judgment are denied and this matter is remanded for further

administrative action consistent with this Opinion.


                            **PROCEEDINGS**


      Plaintiff filed a complaint on December 2, 2014, seeking review

of the Commissioner's denial of disability benefits.  The parties

filed a consent to proceed before a United States Magistrate Judge on

February 15, 2015.  Plaintiff filed a motion for summary judgment on

1 | July 13, 2015.  Defendant filed a motion for summary judgment on
2 | September 11, 2015.  The Court has taken the motions under submission
3 | without oral argument.  See L.R. 7-15; "Order," filed December 8,
4 | 2014.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

8 | Plaintiff alleges disability since September 12, 2010, based on
9 | degenerative disk disease, a herniated disk, and sciatica
10 | (Administrative Record ("A.R.") 161-73, 193, 198).  An Administrative
11 | Law Judge ("ALJ") found Plaintiff has severe degenerative disk disease
12 | of the lumbar spine with multi-level neural foramina stenosis, facet
13 | joint dysfunction with spondylosis, post-laminectomy syndrome, and
14 | parasthesia in the right upper and lower extremities, which prevent
15 | Plaintiff from performing her past relevant work (A.R. 28, 30
16 | (adopting diagnoses at A.R. 237, 245, and vocational expert testimony
17 | at A.R. 69)).  The ALJ also found, however, that Plaintiff retains the
18 | residual functional capacity to perform a limited range of light work,
19 | including the light jobs of electronics worker and production
20 | solderer, and the sedentary jobs of addresser and tube operator (A.R.
21 | 28-31 (relying on non-examining State agency physician residual
22 | functional capacity assessments at A.R. 76-81, 86-91, 95-100, and
23 | vocational expert testimony at 69-70)).[1]

25 | In finding Plaintiff not disabled, the ALJ determined that
26 | Plaintiff's testimony regarding her pain and functional limitations

---

[1]   There are no opinions from examining physicians concerning Plaintiff's residual functional capacity.

1  was less than fully credible, based on the objective medical evidence

2  and the allegedly "conservative" nature of Plaintiff's medical

3  treatment (A.R. 29-30).   The Appeals Council considered additional

4  medical records but denied review (A.R. 14-19).

5

6                              **STANDARD OF REVIEW**

7

8       Under 42 U.S.C. section 405(g), this Court reviews the

9  Administration's decision to determine if: (1) the Administration's

10 findings are supported by substantial evidence; and (2) the

11 Administration used correct legal standards.   See Carmickle v.

12 Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

13 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner

14 of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).

15 Substantial evidence is "such relevant evidence as a reasonable mind

16 might accept as adequate to support a conclusion."   Richardson v.

17 Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted);

18 see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).[2]   "The

19 claimant carries the burden of proving a disability.   Failure to prove

20 disability justifies a denial of benefits."   Ukolov v. Barnhart, 420

21  _____

22      [2]    If the evidence can support either outcome,
               the court may not substitute its judgment for
23             that of the ALJ.   But the Commissioner's
               decision cannot be affirmed simply by
24             isolating a specific quantum of supporting
               evidence.   Rather, a court must consider the
25             record as a whole, weighing both evidence
               that supports and evidence that detracts from
26             the [administrative] conclusion.

27

28 Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations
   and quotations omitted).

1  F.3d 1002, 1004 (9th Cir. 2005) (citations omitted).

2

3      Where, as here, the Appeals Council considered additional

4  evidence but denied review, the additional evidence becomes part of

5  the record for purposes of the Court's analysis.  See Brewes v.

6  Commissioner, 682 F.3d at 1163 ("[W]hen the Appeals Council considers

7  new evidence in deciding whether to review a decision of the ALJ, that

8  evidence becomes part of the administrative record, which the district

9  court must consider when reviewing the Commissioner's final decision

10 for substantial evidence"; expressly adopting Ramirez v. Shalala, 8

11 F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d

12 1228, 1232 (2011) (courts may consider evidence presented for the

13 first time to the Appeals Council "to determine whether, in light of

14 the record as a whole, the ALJ's decision was supported by substantial

15 evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953,

16 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this

17 information and it became part of the record we are required to review

18 as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

19

20                              **DISCUSSION**

21

22      When, as in the present case, an ALJ finds that a claimant's

23 medically determinable impairments reasonably could be expected to

24 cause the symptoms alleged, the ALJ may not discount the claimant's

25 testimony regarding the severity of the symptoms without making

26 "specific, cogent" findings, supported in the record, to justify

27 discounting such testimony.  See Berry v. Astrue, 622 F.3d 1228, 1234

28 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995);

1  but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996)

2  (indicating that ALJ must state "specific, clear and convincing"

3  reasons to reject a claimant's testimony where there is no evidence of

4  malingering).[3]  Generalized, conclusory findings do not suffice.  See

5  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's

6  credibility findings "must be sufficiently specific to allow a

7  reviewing court to conclude the ALJ rejected the claimant's testimony

8  on permissible grounds and did not arbitrarily discredit the

9  claimant's testimony") (internal citations and quotations omitted);

10  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ

11  must "specifically identify the testimony [the ALJ] finds not to be

12  credible and must explain what evidence undermines the testimony");

13  Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically

14  which symptom testimony is not credible and what facts in the record

15  lead to that conclusion."); see also Social Security Ruling ("SSR")

16  96-7p.

17  ///

18  ///

19  ///

20

21  _____

22      [3]    In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the

23  "clear and convincing" standard.  See, e.g., Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v.

24  Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v.

25  Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v.

26  Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000)

27  (collecting earlier cases).  In the present case, the ALJ's findings are insufficient under either standard, so the

28  distinction between the two standards (if any) is academic.

# I.   **Plaintiff's Testimony**

Plaintiff testified that chronic lower back pain prevents her from working (A.R. 47, 58).  Plaintiff previously worked at Wendy's but reportedly had to quit because she could not do the standing and the cleanup required for that job (A.R. 57-58).[4]  Plaintiff also said she could not sit for hours at a time because prolonged sitting causes her back to cramp up (A.R. 58, 62).[5]  She assertedly needs the option to sit and stand at will (A.R. 58).  Plaintiff said that she has daily right side pain that sometimes causes swelling in her right hand and loss of strength, or numbness in her right foot, as well as neck pain (A.R. 59, 61-62, 66; but see A.R. 199, 226 (reporting left side pain and numbness)).  Plaintiff said she thought she could:  (1) lift less than five pounds; (2) sit for no longer than 30 minutes at a time before having to stand for 15 minutes to relieve her pain; and (3) stand for 40 minutes in one place before having to sit for 20 to 30 minutes to relieve her pain (A.R. 64-65).  Plaintiff said she has four to five bad days a month when she stays in bed (A.R. 66).  She also stated that her pain medications make her drowsy and "feel

///

///

///

---

[4]   Although Plaintiff said she stopped working in 2010, records reflected self-employment earnings of approximately $6,900 in 2011 (A.R. 56-57; see also A.R. 178, 181, 183, 185, 187).  Plaintiff said these records must be mistaken; she testified that she had not filed for self-employment (A.R. 57).

[5]   In a report dated June 26, 2012, a field office examiner observed that Plaintiff appeared to have difficulty standing, walking, and sitting (A.R. 202-04).

1  dumbfounded" (A.R. 64; see also A.R. 226).[6]

2

3       Plaintiff described her treatment to date as taking pain

4  medications and sometimes receiving shots.  She reportedly was

5  "supposed to have been" receiving cortisone injections and physical

6  therapy but such treatments had not been started as of the date of the

7  hearing.  See A.R. 58-60.  She had surgery for a herniated disk in

8  1990 (A.R. 59-60 (describing the surgery as a "defusion" where the

9  disk was herniated)).  Plaintiff claimed that she did not have further

10  treatment because her doctors did not provide sufficient paperwork for

11  further treatment (A.R. 60).  At the outset of the hearing, prior to

12  being sworn, Plaintiff also said that her insurance was "stopped" and,

13  for a period of time, she lost her primary care physician, such that

14  all she could do for her condition was get pain pills (A.R. 42, 45).

15

16       Plaintiff said that her pain medication sometimes does not work

17  to treat her pain, and that she takes hot baths or goes to the

18  emergency room for shots (A.R. 60-62).  Plaintiff reportedly was

19  taking Norco, Robaxin and Motrin, and also was using Bengay (A.R. 63,

20  67).

21  ///

22  ///

23  ///

24  ///

25

26       [6]   In a Disability Report - Appeal form, Plaintiff
    reported that she had depression beginning in March of 2012 (A.R.
27  205).  In an "Exertion Questionnaire" dated May 26, 2012,
    Plaintiff reported that she rests or naps every three to four
28  hours during the day (A.R. 201).

1  II.  **Summary of the Medical Record**

2

3       There are relatively few medical records, and the records appear

4  incomplete.  See A.R. 235-68.  All the treatment records provided are

5  from Arrowhead Regional Medical Center (id.).

6

7       On January 28, 2011, Plaintiff presented for a medication refill,

8  complaining of lower back pain (A.R. 239-40).  She was given Norco and

9  Robaxin and was told to return to the clinic in one to two months or

10 as needed (A.R. 239).[7]  Plaintiff returned on September 19, 2011, with

11 complaints of lower back pain and right upper and lower extremity

12 numbness (A.R. 237).  Her examining nurse practitioner noted that

13 although Plaintiff states that she has chronic back pain, Plaintiff

14 had "not been seen in this clinic for many, many months" (A.R. 237).

15 Plaintiff reported that her pain medications were not working and

16 asked for a referral for pain management (A.R. 237).[8]  Plaintiff

17 appeared to be in "moderate distress" related to her back pain, unable

18 to sit still in her chair and alternated from seated to standing

19 position throughout her visit (A.R. 237).  However, Plaintiff

20

21  ─────────────

22       [7]   The treatment provider's prescription notes indicate
     that Plaintiff was given one month's supply of Norco and Robaxin
     with two refills.  See A.R. 239 (noting Norco "TID 90(2)" and
23   Robaxin "TID 90(2)"; TID means three times a day); see also
     Michael Bihari, M.D., Prescription Abbreviations: Understanding
24   What Your Doctor Writes on a Prescription (Dec. 16, 2014)
     (available online at http://healthinsurance.about.com/od/
25   prescriptiondrugs/a/understanding_MD_Rx.htm (last visited
     Sept. 29, 2015).
26

27       [8]   It is not clear whether Plaintiff obtained any pain
     medication refills between her January and September 2011 office
28   visits.

8

reportedly was able to get on and off the examination table with no
obvious difficulty (A.R. 237).  Plaintiff was diagnosed with chronic
low back pain secondary to degenerative disk disease and right upper
and lower extremity parasthesia (A.R. 237).  She was prescribed Norco,
Ultram, and Neurontin, and also was given an intramuscular Toradol
injection (A.R. 238).[9]  Further, Plaintiff was encouraged to do
stretching and back exercises daily (A.R. 238).  The nurse
practitioner indicated that Plaintiff would be referred for pain
management and that an electromyogram ("EMG") of her right extremities
would be ordered (A.R. 238).[10]

        On January 3, 2012, Plaintiff presented for a pap smear and it
was noted that Plaintiff had not been given an appointment for pain
management as discussed in her September visit (A.R. 235-36).
Plaintiff complained of worsening pain and right upper and lower
extremity numbness (A.R. 236).  She was taking Norco, Ultram, and
Neurontin, and also was using a heating pad and Bengay for her pain
(A.R. 236).  She reported that she does not take her medications every
day because the medications only help "at times" (A.R. 236).  She
reportedly had gone to the emergency room and had been given Baclofen
///

---

        [9]     The treatment provider's notes indicate that Plaintiff
was given one month's supply of Norco, Ultram, and Neurontin,
with one refill.  See A.R. 238 (noting Norco "one p.o. b.i.d.
p.r.n., #60, with one refill"; Ultram "one p.o. t.i.d., #90, with
one refill"; Neurontin "one p.o. q.h.s. for 1 day and then b.i.d.
for 1 day and then t.i.d. is prescribed, #90, with one refill";
b.i.d. means twice a day).

        [10]    There is no EMG study in the record, although the
record mentions that one was done (A.R. 236).

and Norco for pain (A.R. 236).[11]  She was trying some exercises at home but reported that she experiences pain afterwards (A.R. 236).

On February 6, 2012, Plaintiff returned, complaining of daily low back pain (A.R. 244).  On examination, Plaintiff had positive straight leg raising and pain with flexion and extension (A.R. 245).  Plaintiff was diagnosed with diffuse degenerative disk disease, multilevel foraminal stenosis, mild to moderate facet joint dysfunction with spondylosis without myelopathy, and post-laminectomy syndrome (A.R. 245).  She was ordered to continue her medications per her primary care provider, and the provider supposedly would follow up with Plaintiff regarding a possible lumbar epidural steroid injection (A.R. 245).

On April 26, 2012, Plaintiff presented to the Spine Clinic for a follow-up examination after having had a "draining lumbar spine wound [and] dural tear [status post] [incision and drainage] [and] dural repair" (A.R. 242-43).[12]  Her treating provider indicated that Plaintiff could be "d/c'd" [discontinued] for this illness and encouraged ambulation (A.R. 242).  Plaintiff reportedly had positive straight leg raising bilaterally (A.R. 242).

Plaintiff presented to the Arrowhead emergency room on June 29, 2012, complaining of, inter alia, low back pain radiating to the left

---

[11]   There are no treatment notes from this reported emergency room visit.

[12]   There are no treatment notes in the record regarding the incision, drainage, and repair.

lower extremity (A.R. 251).  She reportedly had negative straight leg raising (A.R. 252).  Her medications were refilled (A.R. 252). Plaintiff returned to the emergency room on November 4, 2012, complaining of left arm numbness (A.R. 248).  She requested a medication refill (A.R. 248).  Her treating physician noted chronic lower back pain with suspected cervical radiculopathy and ordered her medication refilled (A.R. 249).  On May 29, 2013, Plaintiff returned to the emergency room, complaining of jaw pain and lumbar back pain (A.R. 256).  She was given Norco and Robaxin for her pain (A.R. 257). A lumbar spine x-ray from this visit showed reversed lordotic lumbar curvature, diskitis at L2-L3 (occurring since February 2009), and advanced degenerative change at L5-S1 (stable and unchanged from February 2009) (A.R. 258).

In addition to the above-described records, the Appeals Council reviewed an MRI of Plaintiff's lumbar spine dated October 22, 2013, which showed multilevel degenerative disk disease and facet hypertrophy causing multilevel neural foraminal narrowing (A.R. 261-62).

III. **Analysis**

As indicated above, the ALJ discounted the credibility of Plaintiff's testimony regarding the severity of the symptoms based on the objective medical record and the allegedly conservative nature of Plaintiff's medical treatment (A.R. 29-30).  According to the ALJ, (1) Plaintiff "has not had much treatment" and the treatment she has received has been "conservative"; and (2) the objective medical

record, <u>inter alia</u>: (a) did not show sensory deficits in Plaintiff's extremities "other than in a non-dermatomal pattern," which the ALJ asserted was "suggestive of exaggeration"; and (b) showed pain medication refills (instead of forgoing refills), even though Plaintiff claimed that the pain medication did not always help.  <u>See</u> A.R. 29-30.  As discussed below, these stated reasons are legally insufficient on the present record.

First, the fact (if it is a fact) that a claimant has not received much treatment sometimes can be a sufficient reason for finding the claimant not credible.  <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (unexplained or inadequately explained failure to seek or follow prescribed course of treatment can cast doubt on claimant's credibility); <u>see also, e.g.</u>, <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment such as where there was a three to four month gap in treatment properly considered in discrediting claimant's back pain testimony); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991) (<u>en banc</u>)); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony); <u>Matthews v. Shalala</u>, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible factors in assessing the credibility of pain testimony include limited treatment and minimal

use of medications).

> [An] individual's statements may be less credible if the
> level or frequency of treatment is inconsistent with the
> level of complaints, or if the medical reports or records
> show that the individual is not following the treatment as
> prescribed and there are no good reasons for this failure.
> However, the adjudicator must not draw any inferences about
> an individual's symptoms and their functional effects from a
> failure to seek or pursue regular medical treatment without
> first considering any explanations that the individual may
> provide, or other information in the case record, that may
> explain infrequent or irregular medical visits or failure to
> seek medical treatment.

SSR 96-7p at *7.  Social Security rulings such as SSR 96-7p are "binding on ALJs." Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

In the present case, Plaintiff said that she did not seek more treatment due to a lack of insurance for a period of time and a lack of approval for further treatment (A.R. 42, 45, 58-61).  She stated that she did not have a primary doctor for part of the time period, and did want to come in just for pain medication since the

///

///

///

///

1   medication did not always work for her (A.R. 45, 60).[13]   The ALJ did

2   not mention any of these explanatory statements in his decision,

3   perhaps implicitly disbelieving the statements while citing

4   Plaintiff's lack of treatment as a reason to discount her credibility.

5   See A.R. 29-30.

6

7       The ALJ erred by relying, at least in part, on Plaintiff's

8   alleged lack of treatment without expressly considering Plaintiff's

9   proffered explanation regarding why she did not receive more

10  treatment.  See SSR 96-7p; Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.

11  2007) ("Orn's failure to receive medical treatment during the period

12  that he had no medical insurance cannot support an adverse credibility

13  finding"); Jesus v. Colvin, 2015 WL 4999501, at *8 (N.D. Cal. Aug. 20,

14  2015) ("the Ninth Circuit has consistently held that when a claimant

15  suffers from financial hardships, a failure to obtain treatment is not

16  a sufficient reason to deny benefits"; citing Orn); Oliverio v.

17  Colvin, 2015 WL 1894299, at *5 & n.6 (C.D. Cal. Apr. 27, 2015)

18  (claimant could not be faulted for failing to attend more counseling

19  sessions where her insurance did not cover them; citing Orn); Fisher

20  v. Colvin, 2015 WL 1442064, at *17 (E.D. Cal. Feb. 20, 2015) (ALJ

21  _____

22      [13]   The record reflects that Plaintiff's providers referred
    Plaintiff for additional treatment or discussed with Plaintiff
23  "possible" additional treatment (i.e., pain management, epidural
    injections) (A.R. 235-36, 238, 245), and that Plaintiff
24  complained in one visit that her pain management referral had not
    resulted in an appointment (A.R. 235).  The record also reflects
25  that Plaintiff was "strongly encouraged" to schedule her
    Arrowhead appointments with the same provider since she was
26  getting narcotic pain medications (A.R. 238).  From the limited
    record, it appears that, with the exception of her visit to the
27  spine clinic (A.R. 242), treatment was being provided by
    different nurse practitioners.  See A.R. 235, 238, 245.

could not reject credibility for lack of treatment where claimant
testified that she could not afford to pay for treatment; citing <u>Orn</u>);
<u>Marquez v. Astrue</u>, 2010 WL 1709204, at *2 (C.D. Cal. Apr. 27, 2010)
(ALJ erred by relying on lack of treatment without expressly
considering claimant's explanation that she did not have health
insurance and could not afford to see a doctor; citing <u>Orn</u>).

Second, it is true that a "conservative" course of treatment
sometimes properly may discredit a claimant's allegations of disabling
symptoms.  <u>See, e.g.</u>, <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir.
2007), <u>cert. denied</u>, 552 U.S. 1141 (2008) (treatment with over-the-
counter pain medication is "conservative treatment" sufficient to
discredit a claimant's testimony regarding allegedly disabling pain).
In the present case, however, it is uncertain whether the ALJ
accurately characterized Plaintiff's treatment as "conservative."
<u>See, e.g.</u>, <u>Childress v. Colvin</u>, 2014 WL 4629593, at *12 (N.D. Cal.
Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of
[Norco] (for several years) is 'conservative' or in conflict with
Plaintiff's pain testimony"); <u>Aguilar v. Colvin</u>, 2014 WL 3557308, at
*8 (C.D. Cal. July 18, 2014) ("there is evidence in the record that
Plaintiff has been prescribed narcotic pain medications, . . . It
would be difficult to fault Plaintiff for overly conservative
treatment when he has been prescribed strong narcotic pain
medications").

Third, while the ALJ may properly have relied on "a report of
negative findings from the application of medically acceptable
clinical and laboratory diagnostic techniques" in considering

Plaintiff's credibility, "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." see SSR 96-7p at *6; see also Burch v. Barnhart, 400 F.3d at 681 (lack of objective medical evidence to support the alleged severity of a claimant's symptomatology "can be a factor" in rejecting a claimant's credibility, but cannot "form the sole basis").  Therefore, the ALJ's citation to specific instances in the objective medical evidence which assertedly do not support Plaintiff's allegations cannot by itself justify the ALJ's credibility determination.  See id.

Additionally, the ALJ relied on the fact that examination did not show sensory deficits in Plaintiff's extremities "other than in a non-dermatomal pattern" (A.R. 249), which the ALJ asserted was "suggestive of exaggeration" (A.R. 30).  There is no expert medical opinion in the record that such a test result is "suggestive of exaggeration." Compare A.R. 86 (State agency physician referring to examination but not mentioning "non-dermatomal pattern").  While the ALJ may be correct in his conclusion, see, e.g., Azizi v. Astrue, 2009 WL 1015066, at *6 (C.D. Cal. Apr. 15, 2009) (consultative examiners opining that sensation in a "nondermatomal" distribution suggests "symptom magnification"), the ALJ is not qualified to offer such a conclusion without evidentiary support from a medical expert.  An ALJ may not rely on his or her own lay opinion regarding medical matters. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not qualified as a medical expert cannot make "his own exploration and assessment as to [the] claimant's physical condition"); see also Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely

1  on his or her own lay opinion regarding medical matters); <u>Ferguson v.</u>

2  <u>Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1995) (same); <u>cf.</u> <u>Rudder v.</u>

3  <u>Colvin</u>, 2014 WL 3773565, at *12 (N.D. Ill. July 30, 2014) ("The ALJ

4  may be correct that disabling limitations from multiple sclerosis

5  would result in more frequent treatment or need for medication.

6  However, the ALJ must include evidence to support such a conclusion in

7  his opinion because he is not qualified, on his own, to make such

8  determinations.") (citations and quotations omitted).

9

10     The ALJ also relied on the purported fact that the medical record

11  showed pain medication refills where one might expect forgoing refills

12  based on Plaintiff's reports that the pain medication did not always

13  help her condition (A.R. 30).   Assuming, <u>arguendo</u>, that failure to

14  forgo refills could bear on a claimant's credibility, the record of

15  Plaintiff's refills and their frequency is insufficiently developed to

16  support the ALJ's conclusion that Plaintiff materially failed to forgo

17  refills.   <u>See</u> Footnotes 7-9 above and accompanying text.[14]

18  _____

19     [14]    Defendant also argues, <u>inter alia</u>, that the ALJ
20  properly relied on the fact that Plaintiff allegedly engaged in
   work activities in 2011 to discount Plaintiff's credibility
21  (Defendant's Motion, p. 7).   The Court cannot affirm the
   administrative decision on the basis of this argument.   <u>See</u> <u>Pinto</u>
22  <u>v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot
   affirm the decision of an agency on a ground that the agency did
23  not invoke in making its decision"); <u>see also</u> <u>Treichler v.</u>
   <u>Commissioner</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (for meaningful
24  appellate review, "we require the ALJ to specifically identify
   the testimony . . . she or he finds not credible . . . and
25  explain what evidence undermines the testimony") (citations and
   quotations omitted).   While the ALJ generally referred to the
26  alleged earnings in 2011 as "indicative of the claimant's ability
   to engage in substantial gainful activity" at Step One of the
27  sequential evaluation process (A.R. 27), the ALJ did not
28                                          (continued...)

1    Because the circumstances of this case suggest that further
2    administrative review could remedy the ALJ's errors, remand is
3    appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see
4    Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett")
5    (remand is an option where the ALJ fails to state sufficient reasons
6    for rejecting a claimant's excess symptom testimony); but see Orn v.
7    Astrue, 495 F.3d at 640 (citing Connett for the proposition that
8    "[w]hen an ALJ's reasons for rejecting the claimant's testimony are
9    legally insufficient and it is clear from the record that the ALJ
10   would be required to determine the claimant disabled if he had
11   credited the claimant's testimony, we remand for a calculation of
12   benefits") (quotations omitted); see also Brown-Hunter v. Colvin, 798
13   F.3d 749, 757-59 (9th Cir. 2015) (discussing the requirements for the
14   "extreme remedy" of crediting testimony as true and remanding for an
15   immediate award of benefits); Ghanim v. Colvin, 763 F.3d 1154, 1166
16   (9th Cir. 2014) (remanding for further proceedings where the ALJ
17   failed to state sufficient reasons for deeming a claimant's testimony
18   not credible); Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014)
19   (court may "remand for further proceedings, even though all conditions
20   of the credit-as-true rule are satisfied, [when] an evaluation of the
21   record as a whole creates serious doubt that a claimant is, in fact,
22   disabled"); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (a

23
24          [14](...continued)
25   specifically cite to this evidence as a reason to discount
     Plaintiff's credibility.  Nor did the ALJ address Plaintiff's
26   claim that the reported earnings must have been a mistake.  See
     Footnote 4.  The ALJ's discussion at Step One is insufficiently
27   specific for the Court to conclude that the ALJ discounted
     Plaintiff's testimony on permissible grounds. See Moisa v.
28   Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); SSR 96-7p.

1   court need not "credit as true" improperly rejected claimant testimony

2   where there are outstanding issues that must be resolved before a

3   proper disability determination can be made); <u>see generally</u> <u>INS v.</u>

4   <u>Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an administrative

5   determination, the proper course is to remand for additional agency

6   investigation or explanation, except in rare circumstances); <u>Treichler</u>

7   <u>v. Commissioner</u>, 775 F.3d at 1101 n.5 (remand for further

8   administrative proceedings is the proper remedy "in all but the rarest

9   cases").[15]

10

11                                **CONCLUSION**

12

13       For all of the foregoing reasons, Plaintiff's and Defendant's

14   motions for summary judgment are denied and this matter is remanded

15   for further administrative action consistent with this Opinion.

16

17       LET JUDGMENT BE ENTERED ACCORDINGLY.

18

19       DATED: October 7, 2015.

20

21                              _____

22                                   CHARLES F. EICK
                                UNITED STATES MAGISTRATE JUDGE

23

24   _____

25       [15]   There are outstanding issues that must be resolved
     before a proper disability determination can be made in the
26   present case.  For example, it is not clear whether the ALJ would
     be required to find Plaintiff disabled for the entire claimed
27   period of disability even if Plaintiff's testimony were fully
     credited.  See <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir.
28   2010).